Holly Johanknecht, AK Bar #0511103
DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK   99503
hollyj@dlcak.org
Telephone: (907) 565-1002
Fax: (907) 565-1000
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| Disability Law Center of Alaska, Inc.,<br>　　　　Plaintiff<br><br>vs.<br><br>North Star Behavioral Health System,<br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 3:07-cv-00062-JWS<br>) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DECLARATORY RELIEF AND PRELIMINARY INJUNCTION**

The Disability Law Center (DLC or Plaintiff) has initiated this action to challenge Defendant North Star Behavioral Health System's (North Star or Defendant) refusal to release to DLC documents relating to Defendant's internal investigation of an incident at one of Defendant's facilities involving an altercation between a patient and a staff member. Defendant claims that the requested records are protected by the "peer review" privilege.

### APPLICABLE LAW AND FACTS

**I. Facts**

DLC is the designated P&A for the State of Alaska. In its role as the P&A, DLC undertakes investigations into allegations of abuse and neglect involving individuals with mental illness. The PAIMI Act and its implementing regulations provide DLC with authorization to

access the records of individuals with mental illness, as well as other records that are relevant to its investigations.[1] DLC was contacted by the parent of an individual with mental illness who was at that time a resident at a facility operated by Defendant, B.C. The parent contacted DLC as a result of an incident that occurred involving B.C. and a North Star staff person. B.C.'s mother filed a complaint with North Star regarding the incident, but was not satisfied with the outcome, and still had serious concerns about the treatment her son received during and immediately following the altercation.

As a result of this complaint DLC initiated an investigation into the incident. DLC contacted Defendant and requested a number of records. The requested records included a request for any internal investigation conducted by North Star as a result of B.C.'s mother's complaint to North Star about the incident, as well as supporting documentation. North Star refused to provide the records, asserting that the records are confidential under Alaska law. DLC provided Defendant with the citations for its statutory authority, as well as case law supporting its assertion of authority, however, Defendant continues to refuse to provide DLC with the requested records.

DLC initiated this litigation in an attempt to secure access to those records it is authorized to access through its federal statutory authority, and makes two claims. First that the requested records, even if protected by AS 18.23.030, are within DLC's statutory authority as provided by the PAIMI Act, and secondly that the requested records are not protected by A.S. 18.23.030 and thus within DLC's statutory authority as provided by the PAIMI Act.

---

[1] *See eg* 42 U.S.C. 10805, 42 C.F.R. 51.41

## II. Applicable Law

### A. DLC's Access Authority

The Protection and Advocacy for Individuals with Mental Illness Act of 1986[2] (PAIMI ACT) was enacted by Congress to establish independent protection and advocacy agencies (P&As) nationwide, and invested these agencies with the authority to protect individuals with mental illness from abuse and neglect. 42 U.S.C. § 10801(b)(2)(A) and (B). Congress found that "individuals with mental illness are vulnerable to abuse and serious injury" as well as "neglect, including lack of treatment, adequate nutrition, clothing, health care, and adequate discharge planning." 42 U.S.C. § 10801(a)(1) and (3).

Accordingly, Congress granted P&A agencies the authority to investigate incidents of abuse and/or neglect if the P&A receives a report or complaint regarding the incident, or if the P&A agency has probable cause to believe that incidents have occurred. 42 U.S.C. § 10805(a)(A). To meet this mandate, a P&A agency has the broad authority, when certain conditions are met, to access "all records" of individuals with mental illness. 42 U.S.C. 10805(a)(4). When a P&A agency has received a complaint, or made a determination of probable cause, and if the individual is a client of the system, and the individual and their parent or guardian has so authorized the system, the P&A is authorized to access to "all records" of that individual. 42 U.S.C. 10805(a)(4)(A).

### B. Review Organization

Review organization records, or "peer review" records are those records created by a review organization in the exercise of its duties and functions. A.S. 18.23.030. A review organization is defined by Alaska law[3] as:

---

[2] 42 U.S.C. §§ 10801 - 10827
[3] A.S. 18.23.070(5).

A hospital governing body, or a committee whose membership is limited to health care providers and administrative staff, except where otherwise provided for by state or federal law, and that is established by a hospital, by a clinic, or by one or more state or local association of health care providers, or by an professional standards review organization established under 42 U.S.C. 1320c-1, to gather and review information relating to the care and treatment of patients for the purposes of:

    (i)    evaluating and improving the quality of health care rendered in the area or medical institution;

    (ii)    reducing morbidity or mortality;

    (iii)    obtaining and disseminating statistics and information relative to the treatment and prevention of diseases, illness and injuries,

    (iv)    developing an publishing guidelines showing the norms of health care in the area or medical institution;

    (v)    developing and publishing guidelines designed to keep the cost of health care within reasonable bounds;

    (vi)    reviewing the quality or cost of health care services provided to enrollees of health maintenance organizations;

    (vii)    acting as a professional standards review organization under 42 U.S.C. 1320c;

    (viii)    reviewing, ruling on, or advising on controversies, disputes or questions between a health insurance carrier or health maintenance organization and one or more of its insured or enrollees; between a professional licensing board, acting under its powers of discipline or license revocation or suspension and a health care provider licensed by it when the matter is referred to the review organization by the professional licensing board; between health care provider and the providers patients concerning diagnosis, treatment, or care or a charge or fee; between a health care provider and a health insurance carrier or health maintenance organization and a health care provider or the provider's patients and the federal or a state or local government or an agency of the federal or a state or local government;

    (ix)    acting on the recommendation of a credential review committee or a grievance committee

The records of a review organization are not subject to discovery or subpoena nor are they subject to "introduction into evidence in a civil action against a health care provider arising of the matter that is the subject of consideration by the review organization" *Id*. Furthermore, a person who testified before the organization, or who is a member of it, can not be asked to testify about their testimony before the organization, but they can be asked about matters within the person's knowledge. *Id.* The records of a review organization are available under certain circumstances, for example if the subject of an investigation appeals the organizations actions. A.S. 18.23.030(c).

## ARGUMENT

### I. DLC is Entitled to Declaratory Relief

Federal courts are authorized to declare the rights and other legal relations of a party. 28 U.S.C. § 2201(a) provides, "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." In addition, "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

Declaratory relief is proper when "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and [when] it will afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency*, 966 F.2d 1292, 1299 (9th Cir. 1992). Furthermore, "a court declaration is a message not only to the parties but also to the public and has significant educational and lasting importance." *Bilbrey by Blibrey v. Brown*, 738 F.2d 1467,

1472 (9th Cir. 1984) The public interest is an important factor when considering a grant of declaratory relief. "[t]he decision to grant declaratory relief should always be made with reference to the public interest. *United States v. State of Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).[4]

A declaratory judgment in this case would serve to clarify the rights of the parties with respect to the actual dispute that this case has presented to the court. The issue of the applicability of DLC's statutory access authority to internal investigation materials is at present undecided in this circuit. A declaration of the parties rights in relation to this issue would clear up any uncertainty and allow the parties future interactions involving records requests of this nature to proceed smoothly, each knowing that it is acting in compliance with the law.

Furthermore, the matter is one of great public interest. DLC is mandated to advocate for and protect individuals with mental illness and other disabilities. Under this federal mandate, the agency's authority to access the materials and documents it needs to meet that mandate has a significant impact on the public, particularly the portion of the population DLC is required to protect. It is in the public's best interest that DLC is able to fulfill its mandate and fully and thoroughly investigate the allegations of abuse and neglect it receives, and DLC's ability to access all of the records it is authorized to access greatly impacts DLC's ability to do so.

### a. DLC is Authorized to the Access Requested Records

As noted above, DLC's mandate to investigate instances of abuse and neglect, and its authorization to access records and information as a part of those investigations is set out in the

---

[4] *See also Eccles v. Peoples Bank of Lakewood Village California*, 333 U.S. 426, 431 (1948) ("A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest.")

PAIMI Act. The Act states, "the P&A shall have access to *all records* of any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access." 42 U.S.C. 10805(a)(4). (*emphasis added*). The PAIMI Act defines the term records to include,

> reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating *reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records*

42 U.S.C. 10806(b)(3)(A). (*Emphasis added*). The PAIMI Act implementing regulations further define types of records DLC is authorized to access, including "information and individual records …including medical records, financial records, and reports prepared or received by a member of the staff of a facility or program rendering care or treatment." 42 C.F.R. 51.41(c)(1) The regulations also authorize access to:

> reports prepared …by the facility itself, that describe any or all of the following: (1) abuse, neglect or injury occurring at the facility, (2) the steps taken to investigate the incidents, (3) reports and records …prepared or maintained in connection with such reports of incidents and (4) supporting information that was relied upon in creating a report, including all information and records used or reviewed in preparing reports of abuse, neglect or injury such as records which describe persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings.

42 C.F.R. §51.41(c)(2). The records requested by DLC at issue in this case, fall squarely within the records authorized by the PAIMI Act.

Defendant will assert that the PAIMI Act regulations at 42 C.F.R. § 51.41(c)(4) specifically exempts "peer review" records from those records DLC is authorized to access. However, courts in the Second, Third, Eighth and Tenth Circuits have found that provision to be

invalid as it conflicts with both the letter, and the spirit of the PAIMI Act. *Protection and Advocacy for Persons with Disabilities v. Mental Health Addiction Services*, 448 F.3d 119 (2d Cir. 2006), *Pennsylvania Protection and Advocacy, Inc. v. Houstoun*, 228 F.3d 423 (3d Cir. 2000), *Missouri Protection and Advocacy Services,* 447 F.3d 1021 (8th Cir. 2006), *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003).

The Third Circuit, in *Pennsylvania P&A v. Houston*, found that the PAIMI Act authorizes P&A agencies to access "all records of" an individual with mental illness, and that peer review reports constitute such records. 228 F. 3d at 426. Furthermore, the court held that the plain language of the definition of records, at 42 U.S.C. § 10806(b)(3)(A), "encompasses the peer review reports at issue here, since they are clearly 'reports prepared by … staff of a facility rendering care and treatment'" *Id.* at 426. Finally, the court held that the PAIMI Act clearly preempts "any state law that gives a healthcare facility the right to withhold" such records. *Id*. at 428. The court also noted that the PAIMI Act requires P&A agencies themselves to maintain the confidentiality of these reports. 42 U.S.C. §10806(a).

The Second, Eighth and Tenth Circuits have joined the Third in upholding the authority of a P&A agency to access records protected from disclosure under state peer review confidentiality statutes.[5] These courts have followed the reasoning of the *Houstoun* court, holding that the PAIMI Act preempts state peer review laws because the PAIMI Act unambiguously gives P&A agencies access to "all records" related to an individual with a mental illness.

---

[5] *Protection and Advocacy for Persons with Disabilities v. Mental Health Addiction Services*, 448 F.3d 119 (2d Cir. 2006), *Missouri Protection and Advocacy Servicesv. Missouri Department of Mental Health*, 447 F.3d 1021 (8th Cir. 2006), *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003).

Given the clear language of the PAIMI Act and implementing regulations authorizing DLC to access the requested records, yet the absence of case law in this circuit affirming that authority, a declaration from the court, setting out the rights of the parties regarding requests for records and report produced as the result of an internal investigation, review organization or peer review materials would meet the standard for declaratory relief, in that it would both clarify and settle the legal relations at issue, and it would afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

### b. Requested Records are Not Peer Review Under AS 18.23.303

Even if the court determines that DLC is not entitled to access "peer review" materials under its PAIMI Act authority, this Court should issue a declaration that at least a portion of the type of records requested in this case, records of an internal investigation conducted by the facility as a result of a complaint of a parent, are not peer review, and thus not protected by Alaska law and so within DLC's access authority.

DLC's authority to access investigative reports, prepared by a facility, describing abuse, neglect or injury is clear. 42 C.F.R. § 51.41(c)(2). This is precisely the type of records requested by DLC. When B.C's parent contacted DLC, they indicated that a complaint had been made to North Star, and that as a result, certain investigative activities had occurred, including interviews with staff and residents. Furthermore, B.C.'s parent was informed, not only of the steps taken, but also of the final result of the investigation, that North Star was unable to substantiate the allegations. However, when DLC requested the records and information concerning that investigation, North Star asserted that the requested records were protected "peer review" documents. North Star's claim that the requested records is suspect for several reasons.

Initially, it appears, that if the investigation conducted was in fact conducted by the review organization as asserted by North Star, then by informing the parent of the investigative process and results, they have violated the confidentiality requirement of A.S. 18.23.030 and so are subject to the penalty for violation as set out in A.S. 18.23.040. If the investigation, materials and findings are in fact "peer review," it seems unlikely that North Star would divulge the information to the parent/complainant.

Secondly, A.S. 18.23.030, sets out specific activities that a review organization undertakes. That statute does not include an investigation conducted as a result of a complaint made by a parent or patient as the type of activity conducted by a review organization. While there may be activities that a review organization can undertake that are similar in nature to those conducted as a result of a parent complaint, the facts regarding what precipitated those actions are very important.

North Star's own policies and procedures set out the guidelines for addressing patient/resident/family grievances.[6] North Star is required to establish this type of procedures by 7 A.A.C. 12.890(14)(d) and 42 C.F.R. § 482.13(a)(2). That policy requires that a committee (the Quality Council) is responsible for the review and resolution of grievances. Throughout the grievance process, the facility staff involved consults with the patient/resident to get information and input. The policy further outlines a four-step process by which a grievance is resolved. The final step requires that that North Star will communicate to the patient the steps taken to review the complaint and the steps taken to resolve the complaint.

These two activities, a review organization analysis of an event, and an investigation into a patient/resident/family complaint, by very definition cannot be one and the same. Under one

---

[6] North Star Behavioral Health System Policy and Procedure – "Guidelines for Addressing Patient/Resident/Family Grievances" – Policy: RI103.06.

statute they are required to keep the activities and findings of the review organization confidential, and in response to a parent/patient complaint, the facilities activities, investigation and conclusions are required to be disclosed. It is disingenuous for North Star to assert that they very investigation they are required to conduct and subsequently disclose, is also the type of investigation they are required to keep confidential, particularly in light of the fact that the parent/patient complaint was received and investigated well before North Star ever mentioned peer review. It appears to DLC, that now asserting that the material is peer reviewed is an attempt to re-label a parent/patient investigation so as to not disclose the findings to DLC

That is not to say that North Star is not permitted to do both – investigate a complaint AND have their review organization, separately, review the subject of the complaint. In fact, a dual pronged approach to incidents of this nature is very likely. However, North Star cannot combine the two in an effort to gain the protections arguably provided by Alaska law and apply those protections to an investigation that is not in fact peer review. Thus while North Star may have conducted both a review organization analysis of the event AND a grievance investigation, they cannot claim that the records of both are protected by the review organization statue's requirement of confidentiality. DLC is authorized to access any records created, reviewed or referenced during the course of the internal grievance investigation procedure.

**II. DLC is entitled to a preliminary injunction.**

The purpose of a preliminary injunction is to preserve rights pending resolution of the merits of the case. *Big Country Foods v. Bd. Of Education of the Anchorage Sch. Dist.*, 868 F.2d 1085, 1088 (9th Cir. 1989). In *United States v. Odessa Union Warehouse Co-op.,* 833 F.2d 172, 174 (9th Cir.1987), the Ninth Circuit Court of Appeals described the standard for determining claims for preliminary injunctive relief. The factors traditionally considered in determining whether to

grant a preliminary injunction in the Ninth Circuit are (1) the likelihood of plaintiff's success on the merits; (2) the possibility of plaintiff's suffering irreparable injury if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases, whether the public interest will be advanced by the provision of preliminary relief. *Id*. To obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips in its favor. These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *Id*. Accordingly, the Court must first determine whether the plaintiff has shown sufficient likelihood of success on the merits of her claims and probability of irreparable injury in the absence of injunctive relief to qualify for such relief. Furthermore, if the plaintiff makes the requisite showing, the court then must balance the harms to each party that would result from a grant or denial of injunctive relief to determine if such relief is appropriate. *Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 107 S.Ct. 1396, 1402, 94 L.Ed.2d 542 (1987); *Save the Yaak Committee v. Block,* 840 F.2d 714, 722 (9th Cir.1988). Plaintiffs are entitled to a temporary restraining order if plaintiffs will suffer immediate and irreparable injury. Fed.R.Civ.P. 65(b).

### A. Irreparable Harm

A showing of irreparable harm is required when seeking injunctive relief. However, a showing of irreparable injury may be presumed in certain instances of violations of federal statute, particularly civil rights statutes.[7] *United States v. Odessa Union Warehouse Co-op*, 833

---

[7] *See eg. Equal Employment Opportunity Commission v. Cosmair Inc.*, 821 F.2d 1085, 1090 (5th Cir. 1987, *McKinney v. Town Plan and Zoning Comm'n*, 790 F. Supp. 1197, 1207 (D. Ct. 1992), *Murry v. American Standard, Inc.*, 488 F.2d 529, 531 (5th Cir. 1973), *United States v. Hayes Int'l Corp.,* 415 F.2d 1038, 1045 (5th Cir. 1969),

F.2d 172, 175-176 (9th Cir. 1987). "The function of a court in deciding whether to issue an injunction authorized by a statute of the United States to enforce and implement Congressional policy is a different one from that of the court when weighing Claims of two private litigants." *Id.*

Here, DLC seeks injunctive relief to prevent the violation of the PAIMI Act, a federal civil rights statute. Since Defendants have not provided the requested records and information, DLC's rights have been violated under its federal statute. Thus this Court should find that a presumption of irreparable harm exists. Additionally, because DLC is authorized to seek "legal or other appropriate remedies"[8] under the PAIMI Act, irreparable injury need not be demonstrated since the injunction is sought under a statute that authorizes such relief.

Even if the court does not find that a presumption of irreparable harm exists, the Disability Law Center, and the individuals with disabilities that DLC is mandated to protect, will suffer irreparable harm if an order providing DLC access to the requested records and information is not granted. Prompt access to this type of information is critical so that DLC can not only get a more complete picture of what occurred, but also to review and analyze the actions taken by Defendant to determine if they were in compliance with the law, and also to determine if those actions were appropriate given the conclusions reached through the investigation. Without this valuable and important information, DLC's ability to fulfill its statutory duty to investigate allegations of abuse and neglect in pursuit of its federal mandate to protect and advocate for persons with mental illness will be greatly diminished.

Courts have considered whether a P&A suffers irreparable harm when access under a P&A agency's PAIMI authority is denied. *See*, *Iowa Protection and Advocacy Services, Inc. v.*

---

*Atchingson, T and S.F. Ry. Co. v. Lennen*, 640 F.2d. 255, 259 (10th Cir. 1981), *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984).
[8] 42 C.F.R. § 51.31(a).

*Gerard Treatment Programs*, 152 F. Supp.2d 1150, 1173 (N.D. Iowa 2001), *Wisconsin Coalition for Advocacy v. Czaplewski*, 131 F. Supp.2d 1039, 1053 (E.D. Wisc. 2001). In these cases, the courts found that a P&A suffered irreparable harm when access was denied, as the impact of that denial significantly affected the ability of a P&A to fulfill its statutory mandate to investigate allegations of abuse and neglect.

### B. Substantial Likelihood of Success on the Merits

As asserted above, the records requested by DLC are within the access authority provided to DLC by the PAIMI Act. Courts in the Second, Third, Eighth and Tenth Circuits have held that peer review documents are within a P&A agency's access authority.[9]

#### 1. PAIMI Authorizes DLC to Access "All Records" of an Individual with Mental Illness.

The Act states, "the P&A shall have access to *all records* of any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access." 42 U.S.C. 10805(a)(4). (*Emphasis added*). This provision clearly provides DLC with the authority to access the requested records, particularly when the definition of the term records is considered. In the PAIMI Act the term records includes,

> reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records

---

[9] *Protection and Advocacy for Persons with Disabilities v. Mental Health Addiction Services*, 448 F.3d 119 (2d Cir. 2006), *Pennsylvania Protection and Advocacy, Inc. v. Houstoun*, 228 F.3d 423 (3d Cir. 2000), *Missouri Protection and Advocacy Services,* 447 F3d 1021 (8th Cir. 2006), *Center for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003).

42 U.S.C. 10806(b)(3)(A). (*Emphasis added*). "The plain language of this definition encompasses the peer review reports at issue here, since they are clearly 'reports prepared by … staff of a facility rendering care and treatment.'" *Houstoun* 228 F.3d at 426.

### 2. The PAIMI Act Preempts Alaska State Law.

The requirement of A.S. 18.23.030, that the records of a review organization "shall be held in confidence" does not preempt the requirements of PAIMI. Federal law preempts state law in three circumstances, (1) express preemption, (2) conflict preemption and (3) field preemption. *Southern Pacific Transp. v. Public Util. Comm'n*, 9 F.3d 807, 801 (9th Cir. 1993) *citing English v. General Electric Co.*, 496 U.S. 72, 78 – 80 (1990). In this case, both express preemption, and conflict preemption exist.

The PAIMI Act itself states that, "If the laws of a State prohibit an eligible system from obtaining access to records of individuals with mental illness … section 10805(a)(4) of this title and this section shall not apply to such system before …" 42 U.S.C. § 10806(b)(2)(C). This section has been held to mean that state law is expressly preempted by PAIMI. *See Iowa Protection and Advocacy Servs., Inc. v. Rasmussen*, 206 F.R.D. 630, 639 (S.D. Iowa 2001), *Wisconsin Coalition for Advocacy v. Czaplewski*, 131 F. Supp2d at 1048 – 1049, *Center for Legal Advocacy v. Hammons*, 323 F3d at 1272.

In addition to the express preemption described above, where Alaska law actually conflicts with PAIMI. Conflict preemption occurs, "where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Southern Pac. Transp. Co. v. Public Util. Comm'n*, 9 F3d at 810. The laws of the United States are the supreme laws of the

land. *M'Culloch v. Maryland*, 17 U.S. 316, 342 (1819). State law that conflicts with federal law is therefore, "without effect". *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).

PAIMI authorizes DLC to access "all records" of an individual with a mental illness. The definition of records includes peer review documents. However, A.S. 18.23.030 prohibits the disclosure of these records. Thus there is a conflict. "PAIMI preempts any state law that gives a healthcare facility the right to withhold such records." *Pennsylvania P&A v. Houstoun*, 228 F.3d at 428. Therefore, Alaska law cannot prevent the disclosure of the requested records to DLC.

### 3. 42 C.F.R. § 51.41(c)(4) Does not Diminish DLC's Authority to Access the Requested Records.

The implementing regulations of the PAIMI Act contain a provision that purports to exclude peer review documents from the records a P&A agency is authorized to access when such records are protected by State law, "nothing in this section is intended to preempt State law protecting records produced by medical care evaluation or peer review committees." 42 C.F.R. § 51.41(c)(4). This provision is contrary to the spirit and the letter of the PAIMI Act. "The interpretation of PAIMI set out in 42 C.F.R. § 51.41(c)(4) does not represent a reasonable interpretation of the statute, and we must therefore reject it." *Pennsylvania P&A v. Houstoun*, 228 F.3d at 429 (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984)). If Congress wished to exempt a category of records that is included in the PAIMI Act's definition of records, the change would need to be made in the Act itself, not in regulation. *Id.* at 428. Thus, as the regulation is inconsistent with both the letter and the spirit of the PAIMI Act, it should be rejected and therefore, is not a barrier to DLC's authority to access the requested records.

### CONCLUSION

For the forgoing reasons, Plaintiff requests this Court take the following actions:

(1) Find that the PAIMI Act authorizes DLC to access the requested records, despite being peer review eview materials under A.S. 18.23.030;

(2) Alternatively, Plaintiff requests that this Court find that those portions of the records requested by DLC that were created, reviewed or relied upon during the investigation conducted following the grievance by B.C.'s parent, are not peer review materials under A.S. 18.23.030 and thus the PAIMI Act authorizes DLC to access them.

In addition Plaintiff requests that this Court issue a preliminary injunction, and thereafter a permanent injunction, enjoining Defendants from continuing to refuse Plaintiff access to the requested records. Furthermore the court should enjoin the Defendants from engaging in similar acts in the future and order the Defendants to immediately give Plaintiff full access to the requested records.

Dated: July 27, 2007
Respectfully submitted,

s/ Holly Johanknecht
Holly Johanknecht, AK Bar #0511103
DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK   99503
hollyj@dlcak.org
Telephone: (907) 565-1002
Fax: (907) 565-1000
Attorney for Plaintiff

Certificate of Service

I hereby certify that on the 27th day of
July 2007, a copy of this document
was served electronically by ECF on:

Linda Johnson
ljj@cplawak.com

/s Holly Johanknecht
Holly Johanknecht