UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| DISABILITY LAW CENTER OF ALASKA, INC., | ) ) ) | |
| Plaintiff, | ) ) | 3:07-cv-00062 JWS |
| vs. | ) ) | ORDER AND OPINION |
| NORTH STAR BEHAVIORAL HEALTH SYSTEM, | ) ) ) ) ) | [Re: Deciding Motion at Docket 19 And Setting Schedule For Addressing Motion at Docket 11] |
| Defendant. | ) ) | |

## I. MOTIONS ADDRESSED

At docket 19, defendant North Star Behavioral Health System ("North Star") moved to compel production of documents pursuant to Federal Rule of Civil Procedure 37. The motion was opposed by plaintiff Disability Law Center of Alaska, Inc. ("DLCA") at docket 21, and North Star replied at docket 22. Oral argument was not requested and would not assist the court.

At the end of this order, a schedule is set for further briefing and possible argument on the motion at docket 11 which has been awaiting the decision on the motion at docket 19.

## II. BACKGROUND

Plaintiff Disability Law Center of Alaska ("DLCA") filed an action requesting declaratory relief and a preliminary injunction against North Star Behavioral Health ("North Star").[1] DCLA alleges in its complaint that it is the designated Protection and Advocacy agency for the State of Alaska pursuant to the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801, *et seq.* ("PAIMI"). DLCA argues that as such it may access certain records possessed by North Star which relate to an individual with a mental illness known as B.C.

DLCA was contacted by B.C.'s mother regarding an incident which took place while B.C. was a patient at North Star's facility. As part of its investigation of the parent's complaint, DLCA requested a number of records from North Star, including records pertaining to an internal investigation conducted by North Star. North Star has refused to provide the records, asserting they are "peer review" records which are confidential under Alaska law. DLCA's complaint requests declaratory relief establishing that PAIMI authorizes DLCA to access the requested records even if they are peer review materials under AS 18.23.030, and alternatively requests the court to declare that the requested records are not peer review materials which must be produced under PAIMI. DLCA also seeks a preliminary injunction and a permanent injunction that will prohibit North Star from continuing to refuse DLCA access to records.

Although the lawsuit is about DLCA's efforts to obtain records, ironically the pending motion relates to North Star's request for records form DLCA. In the motion at docket 19, North Star requests the court to compel discovery of five documents listed on a privilege log produced by DLCA in response to a discovery request. According to the privilege log, the documents were withheld based on work product privilege and protections under PAIMI and related regulations.[2]

---

[1] Doc. 1.

[2] Doc. 19 Ex. C.

## III. STANDARD OF REVIEW

Discovery rules are liberally construed to effect the just, speedy, and inexpensive resolution of litigation.[3] Discovery's scope is broad. The Federal Rules of Civil Procedure give parties the right to "obtain discovery regarding any nonprivileged matter which is relevant to any party's claim or defense . . . ."[4] Furthermore, such "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[5] Professor Wright instructs that "[t]he rules . . . permit the broadest scope of discovery and leave it to the enlightened discretion of the district court to decide what restrictions may be necessary in a particular case."[6] The Ninth Circuit observes these principles and has emphasized that "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth."[7] However, a party may interpose objections to discovery requests.[8]

Here, North Star requests discovery pursuant to Federal Rule of Civil Procedure 34 and 37(a)(2). Rule 34 states that a party may serve on any other party a request "to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control." Rule 37(a)(2) states that if a party fails to make a disclosure required by Rule 26(a), any party may move to compel disclosure. The motion must "include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action."[9]

---

[3]8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure*, § 2001 at 44 (2d ed. 1994) ("*Wright*").

[4]Fed. R. Civ. P. 26(b)(1).

[5]*Id.*

[6]*Wright*, § 2036 at 488.

[7]*See Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995).

[8]*E.g.,* Fed. R. Civ. P. 34(b)(2)(C).

[9]Fed. R. Civ. P. 37(a)(2)(A).

### III. DISCUSSION

North Star has shown, as required by Rule 37(a)(2), that it conferred or attempted to confer in good faith with DLCA concerning production of the documents it seeks.[10] North Star contends that the court should compel production of the following numbered documents listed on a DCLA privilege log dated October 24, 2007:[11]

- # 3: Notes from interview with BC's mother, authored by Ron Cowan
- # 5: Notes from interview with BC and parent, authored by Ron Cowan
- # 6: Report to State Licensing and Certification, authored by Ron Cowan
- # 8: Memorandum regarding meeting notes authored by Ron Cowan
- # 12A: Correspondence with parents of North Star residents, authored by Ron Cowan.

Ron Cowan is a DLCA investigator.[12] North Star argues that the documents requested are relevant and that the work product doctrine and PAIMI do not shield the documents from disclosure in this litigation. DCLA asserts that the documents are not relevant and are protected from disclosure by the work product doctrine and PAIMI.

### A. Relevance

North Star argues that the documents requested are relevant to its defense of the claims made for peer review records. It asserts that it should know what efforts were made by DLCA to investigate the incident on its own, and whether DLCA was able to successfully investigate the incident without the peer review documents they seek. DLCA counters that the requested records are not relevant to the issues before the court, and have no bearing on any legitimate defense.

According to Federal Rule of Civil Procedure 26(b)(2), the scope of discovery is broad–reaching "any nonprivileged matter that is relevant to any party's claim or defense."[13] According to North Star, the documents requested are relevant to a defense of the claims made for peer review records, because they are "likely to lead to the

---

[10]Doc. 19, Ex. A, B, D, and E.

[11]Doc. 19 at 3.

[12]Doc. 21 at 3.

[13]Fed. R. Civ. P. 26(b)(1).

discovery of relevant and material evidence that DLCA does not need the peer review documents and only wants the documents."[14] DLCA argues this defense is not legitimate, because the PAIMI Act does not require that DLC must initiate an investigation before accessing the investigatory and peer review records of an institution.[15] DLCA offers no authority that the sufficiency of a defense is pertinent to relevancy for discovery purposes, and even if that is correct, has not conclusively established the premise that the defense is untenable as a matter of law. The five documents will be treated as falling within the broad scope of discovery for purposes of the pending motion.

**B. Work Product Doctrine**

DLCA asserts that document # 8 is protected from production by the work product doctrine. Federal Rule 26(b)(3) provides: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."[16] As noted by the Ninth Circuit: "The Supreme Court has held that the work product doctrine applies to documents created by investigators working for attorneys, provided the documents were created in anticipation of litigation."[17] The Supreme Court stated that the view that work product applies to materials prepared on an attorney's behalf is "reflected" in Rule 26(b)(3).

Here, DLCA is represented by attorney Holly Johanknecht. DCLA's privilege log lists the document requested by defendant as a "memorandum" about "meeting notes," authored by Ron Cowan, a DLCA investigator.[18] DLCA asserts in its response that the document was a memorandum to the client's file following a meeting, and that the

---

[14]Doc. 22 at 5-6.

[15]Doc. 21 at 3.

[16]Fed. R. Civ. P. 26(b)(3).

[17]*In re Grand Jury Subpoena v. Torf*, 357 F.3d 900, 907 (9th Cir. 2004) (Citing *United States v. Nobles,* 422 U.S. 225, 239 (1975))

[18]Doc. 21 at 3.

memorandum was "written solely in anticipation of litigation and by a representative of DLCA."[19]

North Star argues that the memorandum cannot be work product because DLCA does not claim that the document was created at the direction of an attorney, or that it contains mental processes of an attorney. North Star further contends in its reply that the document was prepared "in the ordinary course of business."[20] This statement contradicts the DLCA's assertion that the memorandum was written in anticipation of litigation.[21] Further, North Star offers no explanation to support its assertion that the document was a routine one prepared in the ordinary course of business. Based on the available record, the court finds that the document in question was prepared in anticipation of litigation.

North Star's argument that the work product privilege does not protect documents drafted by non-attorneys is contradicted by Supreme Court and Ninth Circuit precedent, which has held that documents created by non-attorneys working for attorneys is protected by the work product doctrine. This court agrees with North Star that DCLA has not indicated that the memorandum was specifically "created by [an] investigator[] working for [an] attorney[]," because it does not have a stated recipient on the privilege log. However, as stated in Advisory Committee notes to Rule 26, "Subdivision (b)(3) reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative acting on his behalf."[22] Even if the memorandum were not created at the specific direction of Holly Johanknecht, investigator Ron Cowan may be considered a "representative" of DLCA who created the document in anticipation of litigation, and thus under the plain language of Rule 26(b)93), the memorandum is protected. Because Ron

---

[19]Doc. 21 at 3.

[20]Doc. 22 at 3.

[21]Doc. 21 at 3.

[22]Advisory Committee Notes to Fed. R. Civ. P. 26, 1970 Amendment.

Cowan appears to have been employed by DLCA, the memorandum he prepared could be construed as prepared "by a party" in anticipation of litigation and therefore not subject to disclosure.

Materials not normally discoverable under the rule can be subject to discovery where the party requesting the document shows "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[23] North Star has not shown a "substantial need" for the memorandum. The court will not compel production of document #8.

**C. Protection Under PAIMI**

DLCA asserts that certain PAIMI provisions and regulations restrict it from disclosing documents # 3, # 5, # 6, and # 12(a). It contends that 42 U.S.C. § 10806(a) and 42 C.F.R. § 51.45 prohibit it from disclosing or re-disclosing information obtained through its PAIMI access authority. North Star argues that PAIMI requires DLCA to keep certain records only so confidential as the provider of such services would itself be required to keep them. According to North Star "[a] health provider's records are confidential, but are subject to disclosure with a mere subpoena during litigation."[24]

Section 10806(a) of PAIMI states:

> An eligible system which, pursuant to section 10805(a)(4) of this title, has access to records which, under Federal or State law, are required to be maintained in a confidential manner by a provider of mental health services, shall, except as provided in subsection (b) of this section, maintain the confidentiality of such records to the same extent as is required of the provider of such services.

Section 10806(a) appears to apply only to records to which a P&A has access under federal or state law. Further, § 10806(a) appears to require only that these records be kept as confidential as "is required of the provider of such services."[25] None of the requested documents are health records to which DLCA had access under

---

[23] Fed. R. Civ. P. 26(b)(3)(A)(ii).

[24] Doc. 22 at 4.

[25] 42 U.S.C. 10806(a).

-7-

federal law.  Instead, they appear to be documents created by DLCA.  Section 10806(a) does not protect the requested documents from disclosure.

That does not end the inquiry, for DLCA is required by federal regulation to keep these records confidential pursuant to 42 C.F.R. § 51.45(a).  Section 51.45(a) states that "[r]ecords maintained by the P&A system are the property of the P&A system which must protect them from loss, damage, tampering or use by unauthorized individuals."  Pursuant to Section 51.45, a P&A system must ""keep confidential all records and information."  The plain language of the regulation indicates that the documents must be kept confidential.

North Star's briefing does not address the proposition that 42 C.F.R. § 51.45 requires DLCA to maintain confidentiality over "all records and information."  The court finds that pursuant to § 51.45, DLCA is required to keep requested documents # 3, # 5, # 6, and # 12(a) confidential.  Documents # 3, # 5, and # 12A are notes from interviews and an email regarding North Star staff interviews.  Document # 6 is a report to State Licensing and Certification.  This last document appears to be a report submitted by DLCA "for audit purposes and for monitoring P&A system compliance with applicable Federal or State laws and regulations," pursuant to 42 C.F.R. § 51.45 (c). The court will not compel production of documents # 3, # 5, # 6, and # 12A.

## IV.  CONCLUSION

For the reasons stated above, the motion at docket 19 is **DENIED**.

## V. ORDER REGARDING SCHEDULE FOR MOTION AT DOCKET 11

Because the court's criminal calendar prevented more rapid resolution of the motion at docket 19, the motion at docket 11, which by virtue of its nature is entitled to priority on the civil docket, has lingered too long. For this reason, **IT IS ORDERED:**

(1) North Star's response to the motion at docket 11 is due no later than **March 17, 2008** (slightly earlier than under the order at docket 23 which is modified accordingly);

(2) Any reply shall be filed not later than **March 21, 2008**; and

(3) If oral argument on the motion at docket 11 is requested it will be heard at 8:30 AM on March 25, 2008. Argument will be limited to 15 minutes per side. Any attorney not in Anchorage on that date may participate telephonically.

(4) The court will **not** approve any enlargement of the above schedule.

DATED at Anchorage, Alaska, this 3rd day of March 2008.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE